**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CASE NO.**   22-1795-ADC |
| | * | |
| **ANTONIO DARIO LEWIS,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**\*\*\*\*\*\*\***

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Doug Rechtin, am a Special Agent of United States Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), being duly sworn, hereby state as follows:

1. I am a Special Agent with HSI and have been so since October 2008.  As part of my employment with HSI, I attended the Criminal Investigator Training Program, which is a twelve-week basic program for all federal criminal investigators held at the Federal Law Enforcement Training Center in Glynco, Georgia.  Additionally, I attended Immigration & Customs Enforcement Special Agent Training, which is an additional eleven weeks of training.  During both of these courses, instruction was given on basic investigative techniques; federal controlled substances laws; types of controlled substances or controlled dangerous substances (also referred to herein as "CDS"); how CDS are manufactured, transported across borders, distributed, and sold; money laundering techniques; and electronic and physical surveillance techniques.

2. I have directly and/or indirectly participated in the arrest of numerous persons for violations of CDS laws, during which time officers have seized amounts of heroin, cocaine, marijuana, and other illegal substances. I have been involved in the preparation and/or execution of numerous search and seizure warrants.

3. Through my training and experience in narcotics trafficking investigations and arrests, I am familiar with the actions, traits, habits, and terminology utilized by narcotics traffickers. I am familiar with the ways in which drug traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct narcotics transactions.

4. I submit this affidavit for the limited purpose of establishing probable cause to support the issuance of a Criminal Complaint charging Antonio Dario LEWIS with Possession With Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841.

5. Because I submit this affidavit for the limited purpose of establishing probable cause to support the issuance of a Criminal Complaint, it only contains a summary of relevant facts. I

have not included each and every fact known to me concerning the entities, individuals, and the events described in this affidavit. I have not, however, knowingly or intentionally omitted mention of any fact that would defeat a finding of probable cause.

6. Since 2019, investigators with HSI have been conducting an investigation into Antonio Dario LEWIS and others for their suspected involvement in drug trafficking and money laundering activities. During the course of this investigation, investigators have gathered information indicating that LEWIS purchases kilogram quantities of drugs—cocaine, heroin, and/or fentanyl—from several different sources of supply.

7. Investigators have identified numerous instances in which LEWIS supplied bulk cash— suspected drug proceeds—to individuals, who then funneled or were supposed to funnel the funds back to LEWIS's drug suppliers. On at least two occasions in 2021, investigators obtained money personally supplied by LEWIS to an intermediary shortly after LEWIS handed over the money; on both of these occasions, investigators confirmed that the amount provided by LEWIS was over $50,000.

8. During the latter half of 2021 and continuing into the first several months of 2022, investigations conducted a federal wiretap investigation pursuant to which they intercepted two telephone lines used by LEWIS. The contents of intercepted communications confirmed investigators belief that LEWIS was engaged in drug trafficking and money laundering activities.

9. On May 23, 2022, investigators obtained a federal search and seizure warrants for several locations used by LEWIS. One such location was 1123 North Eutaw Street, Apartment 303, Baltimore, Maryland, 21201 ("Apartment 303"). Investigators identified through the investigation that LEWIS likely was using this apartment as a "stash" house, where he would store items—including drugs and cash—related to his drug trafficking and money laundering activities. The listed tenant for Apartment 303 is Lynette Knight, whose name was listed on other rental properties used by LEWIS.[1]

10. On June 6, 2022, investigators executed the search and seizure warrant at Apartment 303.[2] At approximately 10:19 am, investigators made entry into the apartment and encountered LEWIS, wearing only boxer shorts and a tank top, who was the only occupant inside of the apartment. Investigators detained LEWIS for officer safety while a search of the apartment was conducted.

11. During the search of Apartment 303, investigators found a locked safe in the closet of the master bedroom. Investigators also found in the master bedroom several pieces of men's clothing, including a pair of jeans and a shirt. Investigators believe, based on this

---

[1] Knight may be the mother of one of LEWIS's children.

[2] For reasons unrelated to probable cause, on June 6, 2022, U.S. Magistrate Judge Matthew J. Maddox signed a new "set" of search warrants, which were identical to the warrants he signed on May 23, 2022.

investigation, subpoenaed records, and the search warrant, that no men reside full-time at Apartment 303, but that LEWIS is a frequent visitor to that location.  Investigators believe, based on knowledge, experience, and the items found during the search warrant, that LEWIS uses and occupies the master bedroom while staying at Apartment 303.

12. Investigators opened the safe and found it to be full of bulk U.S. currency, mainly in large denominations.  Investigations have not yet completed a full count of the recovered money, but they believe it to be in excess of $100,000.  Investigators believe, based on their knowledge and experience, that this money is drug proceeds.  For example, I know that drug traffickers often maintain large amounts of cash at properties under their control; traffickers do this to avoid putting their ill-gotten gains into the banking system, which would subject their financial transactions to potential law enforcement scrutiny.

13. In addition to the safe, investigators found in the same closet a black trash bag.  Inside the black trash bag investigators found a vacuum-sealed, clear bag containing a large amount of a white powdery substance.  The black trash bag also contained a smaller clear plastic bag containing an off-white powdery substance.

14. Additionally, investigators found in a kitchen closet a large plastic storage bin with a handwritten "Post-it" note that read "closet deadly."  The storage bin contained drug paraphernalia used for the packaging and distribution of drugs, including a sifter and several boxes of "Ziplock"-style storage bags.  Investigators know, based on their training, knowledge, and experience, that these items are used for the packaging and distribution of drugs.  Investigators further believe that the "Post-it" note on the outside of the storage bin was indicating that materials contained within the bin were being used to package and distribute fentanyl, which can be deadly in very small quantities.  As such, the "Post-it" note was serving as a warning to anyone who might come in contact with the items stored in the bin.

15. Investigators transported all evidence to the HSI office to be processed, analyzed, and stored.  Investigators conducted a field test, using a Tru-narc narcotics detection system, of the white power substance seized from the master bedroom closet.  The field test was positive for the presence of fentanyl.  Investigators found the approximate weight to be over 1000 grams.  A field test of the second smaller bag found in the black trash bag was also positive for the presence of fentanyl.  Investigators found the approximate weight to be over 50 grams.

16. I know, based on my training and experience, that the quantity of suspected fentanyl seized from Apartment 303 is indicative of distribution, which is consistent with other facts gathered during this investigation.  I therefore submit there is probable cause to believe that

[INTENTIONALLY BLANK]

LEWIS possessed the drugs found at Apartment 303, and did so with the intent to distribute them.


*Douglas Rechtin*
Special Agent Doug Rechtin,
Homeland Security Investigations


Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this __7th__ day of __June__, 2022.


*A. David Copperthite*
Hon. A. David Copperthite
United States Magistrate Judge
District of Maryland

4